ELISHA S. MILLS & als. *versus* BENJAMIN H. GILBRETH.

In an action against an officer for not safely keeping goods attached on a writ, instructions to the jury, that, where the officer has taken the goods into his custody, and has not stated in his return on the execution that they were taken from him without his fault, the burden is on him to show that he exercised ordinary care in keeping them, and he must satisfy the jury that they were lost without his fault, — are not as favorable to him as he has a right to demand.

The more reasonable rule in such a case is that, if the officer proves the loss of the goods, and the attendant circumstances, the burden of proof is then upon the creditor to show negligence.

In such a case, theft is not presumptive evidence of a want of ordinary care.

Where the evidence, as to the exercise of care by the officer, is evenly balanced, the presumption is that he has done his duty.

Under c. 116, R. S. of 1857, an officer is not required to arrest a debtor on execution, unless a written direction to do so, signed by the creditor or his attorney, is indorsed thereon, and a reasonable sum for fees is paid or secured to the officer.

THIS was an action against the defendant, as sheriff of Kennebec county, for default of his deputy, Elbridge Berry, in not safely keeping goods attached by him on a writ in favor of the plaintiffs, against one Joseph S. Lambard, in not paying over money collected on the execution against Lambard, and in not returning said execution or satisfying it on Lambard's property, or executing it as he was bound by law to do.

On July 3, 1857, the plaintiffs put into Berry's hands their writ against Lambard, on which he attached jewelry and other property, valued at $2506,69. Judgment was obtained at November term, 1857; and execution for $1893,42, debt, and $12,56, costs, was seasonably delivered to Berry, with written directions on its back as follows:—

" Mr. Officer,—Seize and sell the property attached upon the original writ in this action. Plffs' orders. W'm P. Frye, plffs' attorney, by Bradbury, Morrill & Meserve."

No other instructions were given to Berry. He levied the execution on part of the property attached, sold it for $1049,71, and, after deducting his fees, made return on the execution that it was satisfied for $900, $500 of which he paid to the plaintiffs, in May, and $400 in August, 1858; but did not return the execution to the clerk's office until after the commencement of the present action.

Berry, called as a witness by the defendant, testified, amongst other things, that with the jewelry of Lambard he attached a safe; that Lambard told him it had but one key; that having been instructed by the plaintiff to store the jewelry in the safe in some place, he locked a part of it in the safe in August, and placed it in a well built, unoccupied brick store, put the safe key in his pocket, locked the store, and left the key in an office over the store; that he visited the safe a week or two after, but not again until December, when he discovered that most of the jewelry had been stolen, and

the safe left locked; and that, immediately on discovering the loss, he notified the plaintiffs thereof. There was testimony tending to show a want of ordinary care by Berry, and the contrary.

The defendant's attorney requested the Judge, (MAY, J., presiding,) to instruct the jury, 1st,—that, if the defendant or his deputy gave an account of the loss of the property, the burden of proof was on the plaintiff to show that the defendant was guilty of a want of ordinary care in keeping said property, and 2d, that theft is presumptive evidence of a want of ordinary care.

This the Judge refused, but instructed the jury, that Berry having returned the goods as attached on the writ, and having taken them into his custody, and not having stated in his return on the execution that they were lost or taken from him without his fault, it was for him to prove that he exercised ordinary care in keeping them, and to satisfy the jury that they were lost without his fault; that he was bound to take such care as men of ordinary prudence take of their own property in like circumstances, unless excused by the acts or directions of the plaintiffs or their attorneys; that, if he failed to satisfy the execution upon the property attached on the writ, he was bound to exercise due diligence to find other property of Lambard's in his jurisdiction, unless excused as aforesaid; and that, failing to find property sufficient, he was bound to arrest the debtor according to his precept, in default of which the defendant was liable for such damages as the plaintiffs suffered by such default, unless excused by some act or direction of the plaintiffs or their attorney.

The verdict was for the plaintiffs. The defendant excepted to the instructions of the Judge and his refusals to instruct.

*C. Danforth,* in support of the exceptions.

When judgment was rendered against Lambard, Jan. 7, 1858, the R. S. of 1857 were in force. No order was indorsed on the execution for the arrest of the debtor, when it was

delivered to Berry. The last instruction was plainly wrong. R. S., 1857, c. 116, § 5.

The goods having been stolen from Berry, and he having given an account of the loss as soon as known, the first requested instruction should have been given. There is no authority for requiring the theft to be stated in his return. It is for the plaintiff to show a want of ordinary care on the part of Berry. As a bailee, he was answerable for ordinary diligence, but is presumed to have done his duty until the contrary is proved, especially when the goods were stolen and immediate notice given. Story on Bailm., § § 213, 339, 410 and 454; *Platt* v. *Hibbard,* 7 Cowen, 500, note (a); *Beardsley* v. *Richardson,* 11 Wend., 25; 2 Kent's Com., 3d ed., 587; *Schmidt* v. *Blood,* 9 Wend., 268; *Minklan* v. *Rookfelle,* 6 Cowen, 276; 2 Greenl. Ev., § 584; *Wolfe* v. *Dorr,* 24 Maine, 104.

The second requested instruction should have been given. Theft is not presumptive evidence of negligence, but, on the other hand, excuses the bailee until shown to be owing to his fault. Story on Bailm., § 335.

It follows that the instructions given were incorrect.

The officer, having had no orders except those on the back of the execution, and having complied with them as far as he was able, was not obliged to look for other property or arrest the body. Howe's Prac., 136; *Goddard* v. *Austin,* 15 Mass., 133: *Turner* v. *Austin,* 16 Mass., 181; R. S., c. 116, § 5.

*J. M. Meserve, contra.*

The officer had attached property more than sufficient to satisfy the debt, and the execution was seasonably put into his hands, with orders to apply the property to satisfy it. He sold some property, and paid some money to the plaintiff, but did not return the execution, nor pay all the money collected, until after this action was commenced. His return, when made, does not show that any goods were lost. He gives no official account of any loss. The first requested instruction could not apply to such a case. The instruction given was as favorable as the law and the facts would justify.

The defendant received no damage from the refusal to give the second requested instruction. The plaintiffs did not claim that theft was presumptive evidence of want of care, but that the facts and circumstances in the case showed negligence on the part of the officer. The Judge was not bound to give instructions not appropriate to the case at bar.

The question of what is ordinary care is correctly answered by the Judge, in the instructions given. Story on Bailm., § § 11 — 15.

It was not incorrect to instruct the jury that the officer, failing the property attached, was bound to seek other property of the debtor. He was so commanded in his precept. The plaintiffs could not know that the property attached would prove insufficient. In directing the officer to apply that property to satisfy the execution, they did not revoke the general order in his precept. There was no act or direction of the plaintiffs, which, fairly construed, would excuse the officer from obeying his precept.

The officer's duty to arrest Lambard, if he failed to find property sufficient to satisfy the judgment, appeared from the express terms of the execution itself. The property attached proving insufficient, he was bound to take other measures to satisfy the debt. What measures? Clearly, those indicated in his precept. If the plaintiffs suffered damage from his neglect, he was liable for it, unless excused by some act or direction of the plaintiff, which is not pretended.

The opinion of the Court was drawn up by

RICE, J. — This is an action against the defendant as sheriff of Kennebec county, for default of his deputy, Elbridge Berry, for not applying on an execution in favor of the plaintiffs certain goods which Berry had attached on the original writ. The defence was, that the goods had been stolen from a safe in which Berry had deposited them, between the time of the attachment and the time when the execution was put into his hands with directions to seize and sell them on said execution. That the goods were thus lost, the evidence put into

the case by the defendant tended to show, and also that Berry notified the plaintiffs of the loss immediately after the fact came to his knowledge. The plaintiffs charge that this was occasioned through the negligence of Berry.

The defendant requested the Judge to instruct the jury, that, if the defendant or his deputy gave an account of the loss of the property, the burden of proof was on the plaintiffs to show that the defendant was guilty of a want of ordinary care in keeping said property. This request was refused by the Judge, who instructed the jury, that, Berry having returned the goods in controversy as attached on the original writ against Lambard, and having taken them into his custody, and not having stated in his return, on the execution against Lambard, that they were lost or taken from him without his fault, the burden of proof was on him to show that he exercised ordinary care in keeping the same, and that he must satisfy the jury that they were lost without his fault.

Our attention has not been called to any rule of law which requires that the fact of loss should be included in or made a part of the officer's return on the execution. That, perhaps, might have been an appropriate mode of notifying the plaintiff of the loss. It certainly was not the only mode.

As to the burden of proof, in this class of cases, the authorities are not entirely accordant.

Chancellor KENT, 2 Com., 587, states the rule thus:—The bailee, when called upon for the article deposited, must deliver it, or account for his default by showing a loss of it by some violence, theft or accident. When the loss is shown, the proof of negligence or want of due care is thrown upon the bailor, and the bailee is not bound to prove affirmatively that he used reasonable care.

Judge STORY, in his work on Bailments, § 454, says,—In respect to depositories for hire, there seems to be some discrepancies in the authorities whether the *onus probandi* of negligence lies on the plaintiff, or of exculpation on the defendant, in a suit brought for the loss. In England, the former rule is maintained. In America, an inclination of opinion

has been expressed the other way; yet, perhaps, the weight of authority coincides with the English rule. For this, he cites numerous English and American authorities which fully sustain his assertions, and which it is unnecessary to cite.

In *Clark* v. *Spence,* 10 Watts, 335, ROGERS, J., in giving the opinion of the Court, states the rule thus: — "The rule is that, when a loss has been proved, or when goods are injured, the law will not intend negligence. The bailee is presumed to have acted according to his trust, until the contrary is shown. But to throw the proof of negligence on the bailor, it is necessary to show, by clear and satisfactory proof, that the goods were lost, and the manner they were lost. All the bailor has to do, in the first instance, is to prove the contract and the delivery of the goods; and this throws the burthen of proof that they were lost, and the manner they were lost, on the bailee, of which we have a right to require very plain proofs."

This presents the rule in as favorable a light, for the bailor, as the American cases will warrant; and would seem to be a reasonable rule. It leaves the burden of showing negligence, of turning the scale, on the bailor, and still compels the defendant, with whom a knowledge of the facts and circumstances attending the loss often rests, to disclose fully all those facts and circumstances. If, when these facts and circumstances are thus disclosed, and the evidence bearing upon the question of negligence is all out, the scale is evenly balanced, the presumption that the bailee does his duty will leave the case with him.

Tested by this rule, the instructions of the presiding Judge were not as favorable for the defendant as he had a right to demand.

The Judge also instructed the jury, that, if he failed to find property on which to levy plaintiff's execution, it was then Berry's duty to arrest Lambard according to the precept in his hand; and, if he did not do this, the defendant was liable for such damages as the plaintiff suffered in con-

Mills *v.* Gilbreth.

sequence of such neglect, unless he was excused from doing so by some act or direction of the plaintiffs or their attorney.

There is no evidence that he was thus excused by the plaintiffs or their attorney.

It is provided by c. 116, of the R. S. of 1857, § 5, that no officer is required to arrest a debtor on execution, unless a written direction to do so, signed by the creditor or his attorney, is indorsed thereon, and a reasonable sum for his fees is paid or secured to him, for which he shall account to the creditor as for money collected on execution. No such direction was given.

At the time this action was tried, the above provision had recently been enacted, and had probably escaped the attention of the presiding Judge.

As to the second requested instruction, it was undoubtedly correct as a principle of law, and should have been given if there had been any facts in the case which called for it.

*Exceptions sustained, verdict set aside, and new trial granted.*

TENNEY, C. J., and CUTTING, MAY, DAVIS, and GOODENOW, JJ., concurred.